UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUBIN ROBINSON,

      Plaintiff,

v.                                                           CASE No. 8:11-CV-2741-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

      The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any legal errors, the decision will be affirmed.

## I.

      The plaintiff, who was twenty-five years old at the time of the administrative hearing and who has a tenth grade special education, has no past relevant work (Tr. 29-30). He filed a claim for supplemental security

---

      *The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

income, alleging that he is learning disabled and has dyslexia (Tr. 141). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had a severe impairment of borderline intellectual functioning (Tr. 14). The law judge concluded that, with this impairment, the plaintiff can perform medium work with the following restrictions (Tr. 17):

> The claimant is limited to simple, routine, repetitive tasks; requires only occasional interaction with the public, is capable of maintaining attention and concentration for a minimum of two hours at a time, and is able to adapt to changes in a work setting if they are introduced gradually.

Based upon the testimony of a vocational expert, the law judge determined that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as packer, auto detailer, and laundry worker (Tr. 20). The law judge therefore ruled that the plaintiff was not disabled (Tr. 21). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. 1382c(a)(3)(A).   A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert.

denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.

1963).

Therefore, in determining whether the Commissioner's decision

is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v.

Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff's statement of the one issue he asserts (Doc. 24, pp. 2, 5) is too general, vague, and conclusory to meet the requirements of the scheduling Order, which directs the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 15, p. 2). This deficiency can be excused here, however, because the plaintiff does articulate arguments regarding listings 12.05 B and C of Appendix 1, and those arguments will be considered, although they ultimately fail. But any other contentions that may be lurking in the plaintiff's memorandum are deemed abandoned.

A condition listed in Appendix 1 (20 C.F.R. Part 404, Subpart P, Appendix 1) is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff bears the burden of showing that he meets, or equals, a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d) [or

416.920(d)], he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

The plaintiff argues that his IQ scores should have resulted in a finding of disability under listing 12.05 B or C of Appendix 1. Those listings state:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> or

C. A valid verbal, performance, or full scale IQ
of 60 through 70 and a physical or other mental
impairment imposing an additional and significant
work-related limitation of function; ....

No doctor has diagnosed the plaintiff with mental retardation.

Thus, following a psychological examination by John Dsurney, Ph.D., Dr.

Dsurney stated that "[t]here does not appear to be impairment in adaptive

functioning and without impairment in adaptive functioning or indication of

impaired intelligence before age 18 the diagnosis of mental retardation can

not be given" (Tr. 289).   Accordingly, Dr. Dsurney diagnosed the plaintiff

with borderline intellectual functioning and not mental retardation (id.).

In addition, the plaintiff was evaluated by a senior psychologist

in prison while serving a sentence for a drug offense.   Again, the diagnosis

was of borderline intellectual functioning and not mental retardation (Tr.

271).

Similarly, two nonexamining reviewing mental health experts

indicated that the plaintiff did not suffer from mental retardation.  Thus, Dr.

Nancy Dinwoodie, a psychiatrist, in filling out a Psychiatric Review

Technique form, did not mark any of the 12.05 listings, but rather opined a

diagnosis of "BIF" (*i.e.,* borderline intellectual functioning) (Tr. 312). Also, Dr. Arthur Hamlin, a psychologist, did not mark the section for mental retardation (Tr. 298), but instead diagnosed borderline intellectual functioning as an aspect of an organic mental disorder (Tr. 295).

The plaintiff predicates his argument on IQ scores assessed by school psychologist L. Gene Currey and by Dr. Dsurney. On September 8, 1993, Currey reported that the plaintiff, then age 8 and in the second grade, had a verbal IQ score of 72, a performance IQ score of 54, and a full scale IQ score of 60 (Tr. 240). Subsequently, in February 2009, Dr. Dsurney reported that the plaintiff achieved a full scale IQ score of 51, a verbal IQ score of 56, and a performance IQ score of 54 (Tr. 288).

However, in order to meet listing 12.05, the plaintiff had to demonstrate not only that he had a qualifying IQ score, but also that he had "deficits in adaptive functioning initially manifested during the developmental period." Accordingly, in Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis added), the court said that, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have

deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." In this case, the evidence did not establish that the plaintiff had either deficits in adaptive functioning or valid IQ scores.

The plaintiff made no attempt to show that he had deficits in adaptive functioning. In fact, evidence demonstrates the contrary. In a function report, the plaintiff indicated that he can perform chores such as mowing and ironing, attend to his own personal care, shop in stores, and use public transportation (Tr. 149-56). Moreover, the plaintiff spends time playing video games (Tr. 37), and is good at basketball (Tr. 271). These activities confirm Dr. Dsurney's determination that "[t]here does not appear to be impairment in adaptive functioning" (Tr. 289).

Tellingly, at the administrative hearing, the plaintiff was asked by his lawyer, "Why don't you think you can work?" (Tr. 36). The plaintiff responded, "I think I could. I think I can work. But the problem is I've got to learn how to ... sign the application" (id.). The plaintiff iterated this testimony at the end of the hearing when he was asked why he would not be able to work. At that time, plaintiff said, "I think I can work but I've just got to – somebody's got to help me find a job" (Tr. 38).

The finding that the plaintiff has no adaptive functioning deficits is further supported by records prepared during the plaintiff's incarceration. During the plaintiff's prison stay, Dr. E.V. Willis, a senior psychologist, assessed the plaintiff with Global Assessment of Functioning (GAF) scores of 75 and 80 (Tr. 271, 279). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 71-80 indicates that, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors" and reflect "no more than slight impairment in social, occupational, or school functioning" (id.). Thus, the plaintiff's GAF scores are inconsistent with a contention that the plaintiff has deficits in adaptive functioning.

The plaintiff therefore did not demonstrate that he meets, or equals, listing 12.05. That is true of both paragraphs B and C, since a showing of deficits in adaptive functioning is a requirement for all paragraphs of listing 12.05.

In addition, the requirements of 12.05 B and C are not met because the law judge found that the IQ scores were not valid. Thus, the law judge stated (Tr. 15):

> Turning to the requirements in paragraph B, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. As discussed above, objective medical evidence shows that even though the claimant's full scale I.Q. score ranked less than 59, the doctor administering the test noted that the claimant was variably attentive throughout the examination and he exhibited minimal effort, it appeared to be an underestimate of his current level of cognitive functioning (Ex. 3F, pp. 2-3). Additionally, all other references to the claimant's I.Q. score indicated that he ranks higher than the required 59 or less (Ex. 1F, p. 1 and 2F, p. 15). Aside from that, the claimant testified at the hearing "he could work; he just needed someone to help him find a job." Thus, the undersigned finds that the testimony and the question of validity of the overall score, renders it non-acceptable in meeting the 12.05 "B" criteria.

This explanation provides a reasonable basis for finding that the IQ scores are not valid. The plaintiff certainly has not pointed to any evidence which compels a contrary finding. Adefemi v. Ashcroft, supra.

The plaintiff also refers to the IQ scores obtained when he was eight. However, as the Commissioner points out, the IQ test results must be

sufficiently current for an accurate assessment. 20 C.F.R. Part 404, Subpart P, Listing 112.00D 10. In these circumstances, the test scores were only valid for two years (id.). Since the plaintiff's IQ scores when he was eight are not valid with respect to child's benefits, a fortiori, they are not valid for a claim of adult benefits. Notably, the law judge acknowledged the school records (Tr. 18), but he could reasonably decline to evaluate them since, under the regulations, they were extremely out-of-date.

The lack of valid IQ scores also defeats reliance on 12.05 C. That paragraph requires, along with a valid IQ score, "a physical or other mental impairment imposing an additional and significant work-related limitation of function." The law judge found: "In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 15). The law judge could reasonably find that this latter requirement was not met because there is no diagnosis of a physical impairment or a mental impairment other than borderline intellectual

functioning, which is a lesser diagnosis than mental retardation (see, e.g., Tr. 271, 274, 289).

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this ___25th___ day of January, 2013.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE